IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:22-cr-247

UNITED STATES OF AMERICA,                    Charlotte, North
                                             Carolina
              Plaintiff,
                                             October 5, 2023
         vs.
                                             9:28 a.m. - 10:03 a.m.

KEVIN DAMON WILLIAMS,

              Defendant.
_____

                    TRANSCRIPT OF BENCH TRIAL
        BEFORE THE HONORABLE ROBERT J. CONRAD, JR.
             UNITED STATES DISTRICT COURT JUDGE


APPEARANCES:


FOR THE GOVERNMENT:              WILLIAM WISEMAN
                                 United States Attorney's Office
                                 227 West Trade Street
                                 Suite 1650
                                 Charlotte, NC 28202

FOR THE DEFENDANT:               W. KELLY JOHNSON
                                 Federal Public Defender
                                 129 West Trade Street
                                 Suite 300
                                 Charlotte, NC 28202


STENOGRAPHICALLY REPORTED BY:

                     REBECCA MAXCY, RMR, CRR
                     Federal Official Court Reporter
                     United States District Court
                     Charles R. Jonas Federal Building
                     401 W. Trade Street
                     Charlotte, North Carolina 28202
                     (704)350-7493

INDEX OF EXAMINATION

GOVERNMENT'S WITNESS                                    PAGE

VINCENT PISTONE

Direct Examination ........................  12

INDEX OF EXHIBITS

GOVERNMENT                                    RECEIVED

   1 ............................    10

   2 ............................    10

   3 ............................    10

   4 ............................    10

Thursday, October 5, 2023

P R O C E E D I N G S

(Court called to order at 9:28 a.m. with the Court and counsel present.)

THE COURT: Good morning, Your Honor.

MR. JOHNSON: Good morning, Your Honor.

MR. WISEMAN: Good morning, Your Honor.

THE COURT: So I guess we're just waiting for the defendant.

MR. JOHNSON: Yes, Your Honor. We're ready to proceed.

THE COURT: Is the government ready?

MR. WISEMAN: Yes, sir. He's coming from McDowell County, so I don't know the traffic situation.

THE COURT: Is he in the building? So have you-all been encountering difficulties with the -- outside the county location?

MR. JOHNSON: Yes, Your Honor. When McDowell County is our second closest facility where we have clients --

THE COURT: Right.

MR. JOHNSON: Yeah. Our biggest problem is with the majority of our clients are in Lovejoy, Georgia, which is about a four-hour drive.

MS. PALMER: With Atlanta, five.

MR. JOHNSON: With Atlanta traffic, it's a five-hour drive. And we schedule appointments and say we're going to do

Zoom meetings and then the clients don't show up. It's a very, very difficult situation.

THE COURT: I mean, are you talking not just Zoom, but when you drive down there?

MR. JOHNSON: No. When you drive the five hours --

THE COURT: You guarantee it.

MR. JOHNSON: -- they show up. But when you just need to talk to your client for an hour or so or a short discussion, it just doesn't happen. We have better experience with the facility in Irwin County. I think they're more --

THE COURT: Where is that?

MR. JOHNSON: That is on the Florida-Georgia border, Ocilla, Georgia. And they're keeping people there for sentencing, and that's just 24 hours' notice. They get a Zoom call, and that's pretty simple. But even the local jails, McDowell County has no ability to do any Zoom calls or telephone calls. As is -- Alleghany at least you can do a telephone call.

(Defendant present.)

MR. JOHNSON: Your Honor, thank you.

THE COURT: Very well. We're here in the matter of United States v. Kevin Damon Williams for a bench trial pursuant to Rule 23(a). Is the government ready to proceed?

MR. WISEMAN: Yes, Your Honor.

THE COURT: Is the defendant?

MR. JOHNSON: Yes, Your Honor.

THE COURT: Mr. Johnson, I would like to make an in-court inquiry as to the waiver of a jury trial with Mr. Williams, if that's acceptable to you.

MR. JOHNSON: Yes, Your Honor.

THE COURT: Very well.

Mr. Williams, would you please stand. There are some questions I want to ask you about the waiver of a jury trial. I understand that that's what you wish to proceed with, a bench trial, and waive your right to a jury trial. Is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: Before going down that road, there are a few questions I want to ask to satisfy myself that there's a valid waiver. I'm going to ask you a series of questions, and if you need to consult with your lawyer before answering, you may do so. Just let me know.

Can you tell me your full name.

THE DEFENDANT: Kevin Damon Williams, Jr.

THE COURT: How old are you?

THE DEFENDANT: I'm 26 years old.

THE COURT: How far did you go in school?

THE DEFENDANT: I graduated college.

THE COURT: What is your employment background?

THE DEFENDANT: Before I got locked up, I was working at BMW as a service writer/technician.

THE COURT: How long had you been doing that?

THE DEFENDANT: I was there for seven and a half months.

THE COURT: Have you taken any drugs, medicines or pills or drunk any alcoholic beverages in the last 24 hours?

THE DEFENDANT: No, sir.

THE COURT: Do you understand that you are entitled to a trial by jury on the charge filed against you?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that a jury trial means that you would be tried by a jury consisting of 12 people, that all of the jurors would be required to agree on a verdict?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that you would have the right to participate in the selection of the jury?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand if I approve your waiver of a jury trial the Court will try the case and determine your innocence or guilt?

THE DEFENDANT: Yes, sir.

THE COURT: Have you discussed with your attorney your right to a jury trial?

THE DEFENDANT: Yes, sir.

THE COURT: The advantages and disadvantages of doing your trial that way?

Case 3:22-cr-00247-KDB-DCK    Document 70    Filed 11/20/24    Page 7 of 23

THE DEFENDANT:  Yes, sir.

THE COURT:  Having discussed with your attorney your right to a jury trial and having been questioned by the Court, is it your desire still to waive your right to a jury trial and have your innocence or guilt determined by the Court?

THE DEFENDANT:  Yes, sir.

THE COURT:  Mr. Johnson, can I ask you a few questions about -- have you discussed with Mr. Williams the advantages and disadvantages of a jury trial?

MR. JOHNSON:  I have, Your Honor.

THE COURT:  Do you have any doubt that the defendant is making a knowing and voluntary waiver of the right to a jury trial?

MR. JOHNSON:  I have no doubt, Your Honor.

THE COURT:  Has anything come to your attention suggesting that the defendant may not be competent to waive a jury trial?

MR. JOHNSON:  Nothing, Your Honor.

THE COURT:  Very well.

With respect to the government, has anything come to your attention suggesting that the defendant may not be competent to waive a jury trial?

MR. WISEMAN:  No, sir.

THE COURT:  And does the government consent to the bench trial?

MR. WISEMAN: Yes, sir.

THE COURT: All right. Then I'll find, having questioned the defendant and counsel, observing him in this proceeding, and the entire record of the case, that the defendant has knowingly and voluntarily waived his right to a jury trial, to which the government consents. And, therefore, the Court will approve the waiver and proceed to a bench trial on the charge in the indictment.

I'll be glad to hear from the government at this time.

MR. WISEMAN: Your Honor, before we begin, if I could just address a few preliminary matters. First, I'm sure the Court's aware there have been stipulations entered into between the parties. They were filed as Document 32 on September 19th of 2023. It has been signed by all parties. I would just ask the Court take notice of those stipulations.

THE COURT: Any objection?

MR. JOHNSON: No, Your Honor.

THE COURT: Then I will admit the Stipulations of Fact filed at Document No. 32.

MR. WISEMAN: Thank you, Your Honor. Also, an exhibit list was filed as Document 33 listing four exhibits. I would move at this time to pre-admit those four exhibits in the interest of judicial economy.

THE COURT: Any objection to a conditional admission of these exhibits?

MR. JOHNSON:  No, Your Honor.

THE COURT:  All right.  I'll admit them conditionally at this time.

MR. WISEMAN:  Thank you, Your Honor.  At this time do you want me to proceed with a brief opening statement?

THE COURT:  If you wish to or if you want to -- I'm familiar with the case based upon the prior hearing and the stipulations that have been filed, but if the government or the defendant wishes to make an opening statement, a brief opening statement, I'll be glad to hear from you.

MR. WISEMAN:  I'll be very brief, Your Honor.

May it please the Court.  The evidence will show that on April 11th, 2022, officers with the Charlotte-Mecklenburg Police Department responded to a call for service regarding suspicious activity from a white Mercedes in the parking lot at 6322 Old Pineville Road in Charlotte, North Carolina.  Upon arrival the CMPD officers made contact with three occupants of the vehicle.  As they approached the vehicle, the officers could smell the odor of marijuana.

The driver, later identified as the defendant, Mr. Kevin Damon Williams, advised that the occupants had just finished smoking marijuana.  The officers got personal information and identification from the occupants and then removed them from the vehicle so the car could be searched.

A search of the vehicle uncovered a loaded Taurus model

PT111 Millennium G2 9-millimeter handgun that was concealed between the driver's seat and the center console where Mr. Williams was seated.

After completing the search and securing the firearm, Officer Vincent Pistone spoke with Mr. Williams, who was advised of his rights and waived. Mr. Williams admitted to possession of the firearm, advising he bought it from a friend five to six months earlier for $400 and carried it for protection.

Your Honor, that's the testimony and evidence the government anticipates will come out. The government will request a finding of guilty at the conclusion of the trial. Thank you.

THE COURT: Thank you. Does defense wish to make a brief opening statement?

MR. JOHNSON: Very briefly, Your Honor. Your Honor, we're here merely to preserve the motion to suppress issues that were raised. We were advised in early -- excuse me, in late August that the United States did not -- management at the United States Attorney's Office was not able to allow us to preserve the hemp/marijuana argument that was made in the case. Based upon that, we stipulated to everything that we could, being ever mindful of the decision of Wolf and Lattimore from the Fourth Circuit that limits the amount of stipulations that can be done.

We have pared this case down to as little information as we can -- as much information as we can without violating Wolf and Lattimore, and, therefore, I don't anticipate any evidence being presented on my client's behalf and very little or no cross-examination. Thank you.

THE COURT: Thank you.

Call your witness.

MR. WISEMAN: Your Honor, at this time the government would call Vincent Pistone.

COURTROOM DEPUTY: Place your left hand on the bible and raise your right. Do you solemnly swear that the testimony and evidence you're about to give in the matter now before this Court shall be the truth, the whole truth, and nothing but the truth, so help you God?

THE WITNESS: I do.

COURTROOM DEPUTY: Thank you.

VINCENT PISTONE,

called as a witness, being first duly sworn, was examined and testified as follows:

DIRECT EXAMINATION

BY MR. WISEMAN:

Q.  Good morning.

A.  Good morning.

Q.  Can you state and spell your name for the record, please.

A.  My name is Vincent Pistone.  V-i-n-c-e-n-t, last name

P-i-s-t-o-n-e.

Q. And how are you employed?

A. I'm employed as a police officer with the Charlotte-Mecklenburg Police Department.

Q. And were you employed and on duty on April 11th, 2022?

A. Yes, sir, I was.

Q. And were you involved in an investigation on that date?

A. I was, yes, sir.

Q. Who was the subject of your investigation on that date?

A. The subject of the investigation was Mr. Williams.

Q. And is that individual in the courtroom today?

A. He is.

Q. And can you please identify him for the Court by an article of his clothing.

A. He is wearing an orange jail-issued jumpsuit sitting at the defense table.

MR. WISEMAN: Your Honor, the government requests the record reflect the witness has I.D.'d the defendant, Mr. Williams.

THE COURT: It will.

Q. Officer Pistone, at some point on April 11th, 2022, did you encounter the defendant?

A. Yes, sir, I did.

Q. And where did you encounter him?

A. In a parking lot on the 6300 block of Old Pineville Road.

Q. And how did that initial contact come about?

A. It came about after a call for service was generated that I responded to.

Q. And what happened when you first arrived at this location?

A. I located the vehicle that was described in the call for service, exited my vehicle to make voluntary contact with the occupants. Immediately upon exit of my vehicle, I was able to smell a strong odor of marijuana and continued my interaction with the occupants.

Q. How did that interaction with the occupants first begin?

A. It began as I approached the driver's side of the vehicle and could smell the strong odor of marijuana. I collected some demographic information after the admission of finishing smoking marijuana and then continued on to a detention and handcuffs of the front driver and the rear passenger.

Q. And where was Mr. Williams seated in the vehicle?

A. He was the driver.

Q. And what did you do next after obtaining the information from all the occupants and detaining them?

A. I took Mr. Williams and placed him in the back of my patrol vehicle.

Q. What happened after that?

A. A probable cause search of the vehicle was conducted.

Q. And what, if anything, did you find after you searched the vehicle?

A.   I located a concealed firearm in between the driver's seat and the center console.

Q.   Do you remember what kind of firearm that was?

A.   It was a Taurus G2 9-millimeter pistol.

Q.   And after you found the firearm, did you secure it and complete the search?

A.   I did.  I secured it in the rear of my patrol vehicle in the trunk.

        MR. WISEMAN:  Your Honor, permission to approach the witness?

        THE COURT:  You may.

Q.   Officer Pistone, I'm going to hand you what has been marked and admitted as Government's Exhibit 1.  Can you tell me what that is.

A.   That is the Taurus G2 pistol that I located on the day of the incident.

Q.   How do you recognize it?

A.   Both by the make and model on the slide of the pistol and the serial number underneath.

Q.   And that number matches the number of the pistol that you recovered on the date in question from the defendant?

A.   It does.

Q.   So Government's Exhibit 1 is the firearm that you in fact recovered from Mr. Williams on April 11th, 2022?

A.   It is, yes, sir.

Q. Officer Pistone, were you wearing a body-worn camera on this date?

A. I was, yes, sir.

Q. And was it running throughout your encounter with the defendant?

A. It was.

MR. WISEMAN: Your Honor, at this time the government would play a brief portion of Officer Pistone's body cam, which has been pre-admitted as Government's Exhibit 2.

THE COURT: Any objection?

MR. JOHNSON: No objection, Your Honor.

THE COURT: Let it be admitted as Government's Exhibit 1 at this time.

MR. WISEMAN: Your Honor, it would be Government's Exhibit 2.

THE COURT: Let it be admitted.

MR. WISEMAN: Thank you.

THE COURT: You may play it.

(Government's Exhibit 2 was played.)

Q. Officer Pistone, following your search of the vehicle, as part of your investigation did you ask Mr. Williams if he wished to speak with you?

A. I did.

Q. And prior to speaking with him, did you give him his Miranda warnings?

A.   I did.

Q.   And after you gave him those warnings, did he agree to speak with you?

A.   He did.

Q.   And he waived his rights; correct?

A.   Yes, sir, he did.

Q.   In the course of your conversation with Mr. Williams, was the firearm found in the vehicle discussed?

A.   It was.

Q.   And what did Mr. Williams tell you about the firearm?

A.   Mr. Williams stated that he had had the firearm for five or six months and he had purchased it for approximately $400 from a friend.

Q.   Did he say why he was carrying it that day?

A.   For his safety.

Q.   And what happened after your discussion with Mr. Williams?

A.   Mr. Williams was -- remained in the rear of my patrol vehicle.  A criminal history was run through DCI, and he was determined to be a felon.

Q.   And, again, Officer Pistone, was your body-worn camera running during the conversation with Mr. Williams?  Did it capture the discussion with him on that date?

A.   It did.

        MR. WISEMAN:  Your Honor, at this time the government would play another brief portion of Officer Pistone's body-worn

camera, this section of the video previously admitted as Government's Exhibit 3.

THE COURT: Any objection?

MR. JOHNSON: No, Your Honor.

THE COURT: Let it be admitted and published.

(Government's Exhibit 3 was played.)

MR. WISEMAN: No further questions, Your Honor.

THE COURT: Any cross?

MR. JOHNSON: No, Your Honor. Thank you.

THE COURT: You may step down.

THE WITNESS: Thank you, sir.

MR. WISEMAN: Your Honor, the government would rest.

THE COURT: Very well. Any evidence from the defense?

MR. JOHNSON: No, Your Honor. Other than the information that was introduced at the motion to suppress, we have nothing else.

THE COURT: All right. Thank you. So I will deem admitted Government's Exhibits 1 through 4 and consider the exhibits and the testimony.

Any closing arguments from either side?

MR. WISEMAN: Very brief, Your Honor.

THE COURT: Before you start, any motions from the defense at the close of the evidence?

MR. JOHNSON: No, Your Honor.

MR. WISEMAN: Your Honor, the government has proven

beyond a reasonable doubt that the defendant, Mr. Kevin Damon Williams, is guilty of violating Title 18 United States Code Section 922(g), as charged in Count I of the Bill of Indictment, which, of course, is possession of a firearm by a felon.

With regards to the elements of Count I, on April 11th, 2022, the date of the offense, the defendant was a convicted felon, having previously been convicted of a crime punishable by imprisonment for a term exceeding one year.  And, in fact, Mr. Williams knew at the time of the conviction -- knew at the time of this conviction and his status as a felon and that he was prohibited from possessing firearms.  This has been established by parts 1 and 2 of the Stipulations of Fact, Exhibit 4, that was admitted today and has been previously filed with the Court.

With regard to the next element, on that same day, April 11th, 2022, the defendant, Mr. Williams, did knowingly, intentionally, and voluntarily possess a firearm, admitted as Government's Exhibit 1.  This was proven today beyond a reasonable doubt by Officer Pistone's testimony and the admitted evidence.  The firearm was found concealed beside the defendant's seat, and the defendant admitted to Officer Pistone that he purchased the firearm a few months before the incident date for protection.

Part 3 of Government's Exhibit 4, the stipulations,

proves that Government Exhibit 1, the Taurus model PT111 Millennium G2 9-millimeter, is in fact a firearm as defined in Title 18 United States Code Section 921(3) and that the firearm possessed by the defendant was manufactured outside of the state of North Carolina, meaning it traveled in interstate commerce.

So, Your Honor, based on the evidence both from the testimony heard today and the evidence entered and the stipulations entered into by the parties, the United States asks you to find the defendant guilty of Count I in the Bill of Indictment. Thank you.

THE COURT: Thank you. Mr. Johnson, anything from the defense?

MR. JOHNSON: No, Your Honor. Thank you.

THE COURT: Very well. Mr. Williams, if you would please stand.

I have at the beginning of this proceeding ascertained that Mr. Williams had knowingly waived his right to a jury trial. This waiver is in written form, signed by the attorneys, signed by me after conducting an in-court inquiry in which I ascertained that Mr. Williams did know and voluntarily waived his right to a jury trial.

Based upon the evidence presented here today, uncontested, it appears to the Court from the stipulations and testimony of Officer Pistone -- is it Pistone?

OFFICER PISTONE: Pistone, sir.

THE COURT: Pistone, I'm sorry -- Pistone the government has proved beyond a reasonable doubt the elements of the 922(g) offense; that Mr. Williams on April 11th, 2022, having been convicted of a felony punishable by imprisonment for exceeding one year, that he knew he was a felon; and that he knowingly possessed a firearm, the Taurus weapon, the Taurus model PT111 G2 9-millimeter weapon, which had traveled in interstate commerce.

Accordingly, I will find Mr. Williams guilty of the offense of a single count of violating 18 United States Code Section 922(g)(1).

Any objections from either side to that finding?

MR. JOHNSON: No, Your Honor.

MR. WISEMAN: No, sir.

THE COURT: All right. Mr. Williams, what will happen next is that your case will be referred to the federal probation department for the purpose of preparing a presentence report. You will be interviewed for that report, and you have a right to have your attorney present during that interview.

Once that report is finished and sent to the parties, there's a certain amount of time that each side has to object to any of the findings of fact or conclusions of law. And then the case will be -- your case will be scheduled for a sentencing hearing where you will appear before me. And we'll

hear from both sides.  You'll have an opportunity to make any statement you wish to make and then the Court will impose sentence.  All of that takes a matter of months, and so it will be some time before you appear in court again, but I wanted to make sure you understood what was going to happen from this point forward.

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  Anything further from either side?

MR. WISEMAN:  No, sir.

MR. JOHNSON:  No, Your Honor.  I think the Court ordered a presentence investigation.  He would like to be interviewed.  And if we need to execute any documents, I'm sure Ms. Lynch will send them to me.

THE COURT:  Great.  Thank you.

All right.  This matter is concluded.  Mr. Williams is remanded at this time.

(Proceedings concluded at 10:03 a.m.)

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF NORTH CAROLINA

CERTIFICATE OF REPORTER

I, Rebecca S. Maxcy, Federal Official Realtime Court Reporter, in and for the United States District Court for the Western District of North Carolina, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 20th day of November, 2024.

/s/ Rebecca S. Maxcy_____
REBECCA S. MAXCY, RMR, CRR
Official Court Reporter